EVANDER, J.
The minor child, L.B., was adjudicated dependent as to both her mother[1] and father. On appeal, the father, T.B., contends that there was insufficient evidence to support the trial court’s findings that: (1) T.B. had abandoned the child, and (2) the child was at imminent risk of neglect if placed in his custody. We agree, and, accordingly, reverse.
L.B. was born on March 27, 2007. At the time, her mother was incarcerated at Lowell Correctional Institution. The mother’s anticipated release date is in 2013. The child was immediately shel *1212 tered and then placed with a maternal relative. On April 19, 2007, DCF filed a petition for dependency. T.B. was alleged to be the prospective father.
At the time of the child’s birth, T.B. was serving a nine-month sentence at the Polk County Jail. He appeared, by telephone, for the arraignment held on April 24, 2007. Although T.B. believed he was the father, he requested a paternity test. The trial court ordered expedited paternity testing. T.B. was prohibited from having contact with the child until paternity was established.
Unfortunately, the paternity testing was not accomplished in an expedited manner because DCF did not arrange to have a DNA sample taken from T.B. during the time that he was incarcerated. T.B. was released on November 10, 2007, and submitted himself for paternity testing on December 5, 2007. On January 31, 2008, the DNA test results were filed with the trial court, establishing that T.B. was the child’s father. On that same day, the trial court entered a final judgment establishing paternity and also authorizing T.B. to have supervised visitation. Two weeks later, an order was entered requiring T.B. to pay $236.50 per month for child support, commencing March 1, 2008.
After T.B.’s paternity was established, DCF filed a supplemental dependency petition, alleging that T.B. had abused, abandoned, or neglected the child in that T.B. had a history of criminal activity, did not have the present ability to provide for the child, had not provided for the child, and had not established a relationship with the child.
An adjudicatory hearing was held on February 26, 2008. Significantly, the adjudicatory hearing was held less than a month after the establishment of paternity and prior to the date on which T.B.’s first ehild support payment was due. The evidence, taken in the light most favorable to DCF, established that T.B. had been incarcerated from shortly prior to the child’s birth until November 10, 2007. Although T.B. had provided some support to the mother during her pregnancy, he had not seen the child nor financially supported the child prior to the date of the adjudicatory hearing. Based on these facts, the trial court found that T.B. had abandoned the child.
A court may find that a parent has abandoned a child when, in the opinion of the court, the parent’s efforts to support and communicate with the child “do not evince a settled purpose to assume all parental duties.” § 39.01(1), Fla. Stat. (2008). Ordinarily, a finding that a parent has not seen or supported his or her child for eleven months would support a finding of abandonment. However, under the facts of this case, we believe the trial court erred in finding that T.B. had abandoned his daughter. T.B. was not determined to the child’s father until January 31, 2008. It was DCF, not T.B., that was primarily responsible for the delay in implementing the paternity testing. Notwithstanding the trial court’s May 1, 2007, order for expedited paternity testing, DCF failed to arrange for a DNA sample to be taken from T.B. prior to his release from jail. T.B. submitted a DNA sample less than a month after his release.
DCF argues that T.B. should have voluntarily acknowledged paternity in April, 2007, rather than request DNA testing. While T.B. always believed that he was probably the child’s father, the record reflects that the mother had identified two prospective fathers.[2] Given the mother’s uncertainty, T.B.’s request for paternity cannot be deemed to be unreasonable. Additionally, T.B.’s failure to visit the child *1213 prior to February 26, 2008, cannot support a finding of abandonment where the record reflects that T.B. was not permitted to have contact with the child prior to January 31, 2008. The DCF caseworker acknowledged that T.B. had contacted her in mid-February to schedule visitation and a visit had been scheduled for February 26th — the date of the adjudicatory hearing. Furthermore, T.B.’s failure to pay child support does not support a finding of abandonment where paternity was established less than four weeks prior to the adjudicatory hearing. T.B. testified that he intended to timely pay the first child support payment — a payment that was not due until after the adjudicatory hearing.
We also reject DCF’s argument that T.B.’s incarceration for the first seven and one-half months of the child’s life constituted abandonment. While T.B.’s incarceration for a crime that occurred prior to the child’s birth was a factor for the court to consider, it did not, in and of itself, constitute abandonment. See, e.g., W.T.J. v. E.W.R., 721 So.2d 723, 725 (Fla.1998); F.G. v. Dep’t. of Children & Families, 820 So.2d 1027, 1030 (Fla. 4th DCA 2002).
The trial court also found that the child was at imminent risk of neglect if placed in the custody of T.B. This conclusion was based on the trial court’s findings that T.B. had no driver’s license, had been convicted of a felony, had no job, and lived with his mother and aunt. Again, the evidence was insufficient to support the trial court’s conclusion. First, there is obviously no requirement that a parent have a driver’s license in order to be permitted to have physical custody of his or her child. Second, a parent’s felony record, without more, does not establish that a child is at imminent risk of neglect if placed in that parent’s care. In the present case, T.B. admitted that he had been convicted of two felonies. However, the record is unclear as to the nature of these felonies. Third, although T.B. did not have a job at the time of the hearing, there was evidence that he had previously worked in construction with his father. Finally, the evidence was undisputed that T.B.’s mother and aunt were willing for T.B. and the child to reside with them. T.B.’s aunt testified that there would be adequate income in the household to provide for the child’s needs. Although DCF contested this assertion, it failed to present sufficient evidence to support a finding that the child could not be adequately provided for in T.B.’s household. Indeed, there was absolutely no evidence describing the residence other than the aunt’s testimony that there was adequate space for the child and that the house was appropriate for the child.
The trial court erred in adjudicating L.B. dependent as to the father.
REVERSED.
MONACO and COHEN, JJ., concur.

. The mother did not appeal.

. The mother’s identification of two prospective fathers is reflected in the Comprehensive *1213 Behavioral Assessment filed by DCF on June 29, 2007, and the general magistrate’s report of September 19, 2007. We cannot ascertain from the record the date on which the mother first identified more than one prospective father.